UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 10-294 (JNE/FLN) |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **DEFENDANT'S SENTENCING** |
| | ) | **POSITION** |
| | ) | |
| THEODORE STEVIE VARNER, | ) | |
| | ) | |
| Defendant. | ) | |

The defendant, through the undersigned counsel, respectfully submits the following position regarding sentencing. Mr. Varner opposes the government's motion for upward departure. Further, due to serious medical limitations identified in the presentence report, Mr. Varner seeks a downward departure or variance to the statutory mandatory minimum of 15 years.

I.      Legal background

In the years following the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005), the relationship between a sentencing court and the sentencing guidelines has evolved well beyond the "advisory" label given to the guidelines by the Supreme Court. In more recent decisions, the Supreme Court has elaborated on the discretion a district court has to make sentencing decisions based on the facts of each case and broader policy questions. *Spears v. United States*, 129 S.Ct. 840, 843-44 (2009); *Kimbrough v. United States*, 128 S.Ct. 558, 575-76 (2007); *Gall v. United States*, 128 S.Ct. 586, 597-98 (2007). The practical reality after these decisions is that a sentencing judge, in evaluating each unique person that

stands to be sentenced along with facts of each case may "reject (after due consideration) the advice of the Guidelines." *Kimbrough*, 128 S.Ct. at 577 (Scalia, J., concurring). Further, the sentencing court may vary from the advisory guideline range based solely on policy considerations, including disagreement with the policy underlying the guidelines in a case. *Id.* at 570. This is true "even in the mine-run case." *Id.* at 563.

The sentencing procedures set forth by the Supreme Court make clear that the recommended guideline range is just that: a recommendation. For a sentencing judge, "the Guidelines should be the starting point and the initial benchmark" in determining a sentence. *Gall*, 128 S.Ct. at 596.

> [A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. *In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented.*

*Id.* at 596-97 (citation and footnote omitted) (emphasis added). The district court must "make an individualized assessment based on the facts presented." *Id.* at 597. Ultimately, a sentencing judge must "impose a sentence sufficient, but not greater than necessary." *Kimbrough*, 128 S.Ct. at 570 (citing 18 U.S.C. § 3553(a)). In doing so, the judge looks to the Guidelines for "general advice," but that advice must be "filter[ed] . . . through § 3553(a)'s list of factors." *Rita v. United States*, 551 U.S. 338, 358 (2007). Further, the *Gall* Court rejected the rule that extraordinary circumstances are required to justify a sentence outside the Guidelines range. *Gall,* 128 S.Ct. at 595. In imposing a just sentence,

a sentencing court examines the facts of a case and the defendant and applies them to the sentencing statute. Under 18 U.S.C. § 3553(a) the Court shall impose a sentence "sufficient, but not greater than necessary" and shall consider

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**II.     The 3553 factors.**

    **A.     The nature and circumstances of the offense.**

In this case, the jury found Mr. Varner guilty of possessing a firearm after being a convicted of a felony. Witnesses testified that Mr. Varner was arrested after running in an alley and falling. Police testified to recovering a gun at the spot where he fell. Other than these facts, there is no suggestion of extreme conduct or use of the firearm in any crime of violence. In short this offense is a typical firearms possession case.

### B.     The history and characteristics of the defendant.

The most accurate word to describe Mr. Varner's childhood is "tragic." He grew up with a drug-addicted mother who did the best she could to care for her children, but it is clear that she could do little to lift her family from poverty and suffered from mental health issues, as she ultimately committed suicide. That fact had a significant effect on Mr. Varner. He finds it difficult to discuss his childhood because it is so painful. His father has been incarcerated since Mr. Varner was three years old, and his absence has been a difficult fact in Mr. Varner's life. Tellingly, Mr. Varner's cousin, who cares about him deeply, explained to the presentence writer that he believes that a lack of treatment options and undiagnosed psychological problems have had an effect on Mr. Varner.

In any event, Mr. Varner is clearly supported by family members such as his cousin. Further, prior to his arrest in this case, Mr. Varner had taken extremely positive steps. He had become a master barber, receiving an "excellent" educational rating and obtaining his barber license. He used that education to run a barbershop and follow through on his new vocation. He was pursuing a college degree. In short, Mr. Varner was showing promise in getting his life on track.

### C.     Respect for the law, just punishment and deterrence.

While this is a serious offense, it comes with a statutorily-mandated penalty that matches the seriousness of the offense. A fifteen-year mandatory minimum sentence is significant, and when combined with the mitigating sentencing factors discussed below,

4

unquestionably imposes respect for the law and just punishment on anyone convicted under § 924(e). Further, the effect of such a mandatory minimum penalty achieves a serious degree of both individual and general deterrence. In short, even a mandatory minimum penalty will be plenty to achieve these statutory goals as they apply to Mr. Varner and others.

### D. The need to provide medical care.

The presentence report makes clear that Mr. Varner has significant health problems that are the basis for a separate departure or variance request as outlined below. There is certainly no reason to impose a longer sentence on Mr. Varner to accomplish some type of medical care that may be necessary. If anything, the PSR and the care Mr. Varner has received thus far makes clear that treatment options for Mr. Varner will be limited, and he may always live in pain. A shorter sentence is therefore justified.

### III. A downward departure or variance is justified because incarceration for Mr. Varner will be significantly more punitive due to his health problems.

The presentence report makes clear that Mr. Varner is not a healthy man. Well before he was arrested in this case, he suffered from serious back problems after being robbed in February 2010 by two assailants, being rammed into a door frame and kicked repeatedly in the back. PSR ¶ 74. The result of these injuries have had a significant impact on his daily life. The pain affects his both his back and his legs, creating continuous throbbing sensations. In August of 2010, before he was arrested, Mr. Varner sought out medical treatment at Regions Hospital. He was diagnosed with mobile spondylolisthiesis, and chose elective surgery. PSR ¶ 72. Before that surgery could occur, however, he was arrested.

Indeed, the trial testimony in this case included evidence that Mr. Varner fell more than once just prior to his arrest, including once on his tailbone.

The problems he experienced prior to his arrest have only been exacerbated once he was detained. He now experiences significant pain when both sitting and standing. He cannot stand or walk for more than seven or eight minutes without experiencing excruciating pain. PSR ¶ 70. Although he has worn a back brace and continuously used a cane during this custodial time at the Anoka County Jail, those aids do not alleviate the pain. Despite a specialist's recommendation of prescription medication, the jail staff have refused such medication in favor of over the counter pain medication. Despite a recommendation of surgery by one of the specialists, it is the understanding of the undersigned that no surgery will occur. In short, Mr. Varner must simply live with debilitating pain. These facts demonstrate clearly that Mr. Varner's poor physical condition and consistent pain means that his incarceration will necessarily be more punitive for him than if he were healthy. Were he free, he could follow through on a prescription recommendation or elect to have a surgery that might ease his pain. It appears that this is not an option for him while incarcerated. The sentencing guidelines make clear that in these circumstances, a departure or variance from the guidelines is appropriate.

> A defendant's physical health can be a basis to depart downward from the guidelines. Physical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. *An extraordinary physical impairment may*

6

> *be a reason to depart downward*; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

U.S.S.G. § 5H1.4 (emphasis added). Further, pursuant to Eighth Circuit law, a three-part test guides this Court in determining whether a sentence reduction is appropriate.

> To determine if an extraordinary physical impairment exists, we ask three questions. First, is the particular defendant's physical condition such that he or she would find imprisonment more than the normal hardship? Second, would imprisonment subject him or her to more than the normal inconvenience or danger? Specifically, would imprisonment worsen his or her condition or does he or she require special care not provided by the [Bureau of Prisons]? Third, does the physical condition have any substantial present effect on the defendant's ability to function?

*United States v. Charles,* 531 F.3d 637, 642 (8th Cir. 2008) (quoting *United States v. Coughlin*, 500 F.3d 813, 818 (8th Cir. 2007)).

Here, all three parts of the test are established. First, custodial time for Mr. Varner has already been a serious hardship. He is constantly in pain, and his pain is aggravated by activities that cannot be avoided in an incarceration setting: both standing and sitting. Second, his physical condition, particularly his susceptibility to pain when engaging in quick movements, puts him at risk of physical danger to be harmed by others inside of a penal institution. His ability to defend himself is severely diminished. Third, the pain alone has a substantial present effect on his ability to function: he walks with a cane and has a back brace. In short, his custodial time will be spent in pain and functioning differently than a typical inmate. Given these factors, a lower sentence will be sufficient to punish him. Therefore, a departure or variance to the mandatory minimum is just.

**IV.     Mr. Varner opposes the government's upward departure motion.**

The government moves for an upward departure based on the fact that Mr. Varner has a significant number of criminal history points. He opposes this departure because he will be penalized by a severe recidivist enhancement; Armed Career Criminal. See 18 U.S.C. § 924(e). The result is a 15-year mandatory minimum and a significant increase in the applicable offense level. In short, even before any departure or variance, the recommended guideline range is already sufficient, if not greater than necessary, to accomplish the statutory sentencing goals. For these reasons, Mr. Varner opposes the government's upward departure motion.

### Conclusion

Considering the arguments above, the defendant asks that the Court sentence him to 180 months. Such a sentence of no more than would be sufficient but not greater than necessary to serve the many goals of sentencing and would fairly reflect the unique circumstances of this case.

Dated:  May 17, 2011                           Respectfully submitted,

*s/ Reynaldo A. Aligada, Jr.*

REYNALDO A. ALIGADA, JR.
Attorney ID No. 319776
Attorney for Defendant
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415